## THOMAS KANE AND COMPANY, APPELLANT, *v.* DOWNING, RESPONDENT.

[Submitted October 6, 1893.  Decided April 16, 1894.]

SUBSCRIPTION TO FUND—*Liability of delinquent subscriber—New promise.*—A delinquent subscriber to a fund for the construction of an opera-house is liable in an action brought to enforce payment of his subscription without proof on the part of the plaintiff that some liability was incurred pursuant to defendant's repeated promises to pay, made subsequent to his subscription, where the action was based, not upon such subsequent promises, but upon his original subscription.

SAME—*Same—Evidence.*—Evidence that when a delinquent subscriber signed a subscription list the cost and character of the building contemplated was fully explained to him, and that the trustees proceeded with the completion of the enterprise, relying upon the subscription of defendant and others, is proper where defendant pleaded that his subscription was intended for a less expensive enterprise.

*Appeal from Eighth Judicial District, Cascade County.*

ACTION to recover delinquent subscription to a fund. The cause was tried before BENTON, J. Defendant had judgment below. Reversed.

*Ed L. Bishop,* for Appellant.

I. The defendant does not claim to have revoked his sub-scription, if at all, prior to the time the opera-house company,

relying upon the same, with others, had let the contract for the building of the opera-house and incurred liability thereby to an amount exceeding the total of the subscriptions. No payee being named in the subscriptions in question, the defendant's subscription constituted a continuing offer to pay the same to any person who accomplished the object of the subscription. "They who advanced money, did work, or furnished materials, were proper promisees or payees," and the Great Falls Opera House Company, by accepting the subscriptions in question and building the opera-house, became the payee to whom the promise was made, as if made to it by name. (*McClure* v. *Wilson*, 43 Ill. 356; *Hall* v. *City of Virginia*, 91 Ill. 535; *Robertson* v. *March*, 3 Scam. 198; *Pryor* v. *Cain*, 25 Ill. 292; *Miller* v. *Ballard*, 46 Ill. 379; *Griswold* v. *Trustees of Peoria University*, 26 Ill. 41; 79 Am. Dec. 361; *Swain* v. *Hill*, 30 Mo. App. 436; *Comstock* v. *Howd*, 15 Mich. 241; *Thompson* v. *Page*, 1 Met. 569; *Homes* v. *Dana*, 12 Mass. 190; 7 Am. Dec. 55; *Farmington Academy* v. *Allen*, 14 Mass. 172; 7 Am. Dec. 201; *Bryant* v. *Goodnow*, 5 Pick. 228; *University of Des Moines* v. *Livingston*, 65 Iowa, 202.)

II. The organization of the Great Falls Opera House Company and the uniting therein as stockholders of the subscribers, for the purpose of collecting the subscriptions in question and building the opera-house, constituted the company the common representative, agent, or trustee for the entire body of the subscribers to carry out the object of the subscriptions. (*Swain* v. *Hill*, 30 Mo. App. 436; *Edinboro Academy* v. *Robinson*, 37 Pa. St. 210; 78 Am. Dec. 421; *Shober* v. *Lancaster County Park Assn.*, 68 Pa. St. 431; *Gibbons* v. *Grinsell*, 79 Wis. 365; *Marysville etc. Co.* v. *Johnson*, 93 Cal. 538; 27 Am. St. Rep. 215; *Athol Music Hall Co.* v. *Carey*, 116 Mass. 471.)

III. When the Great Falls Opera House Company accepted and proceeded to collect the subscriptions it thereby agreed to hold and appropriate the funds subscribed in conformity with the terms and object of the subscription, which implied promise could have been enforced, and thus mutual and independent promises were made which constituted a legal and sufficient consideration for each other. (*Ladies' Col. Inst.*

v. *French*, 16 Gray, 201; *Maine Central Inst.* v. *Haskell*, 73
Me. 142, 143; 26 Am. L. R. 2.) If either of the three pre-
ceding propositions are correct, the court evidently erred in
instructing the jury that in order to constitute defendant's
promise to pay the subscriptions to the company a waiver, they
must find that the company incurred liability in the erection
of the opera-house by reason of the promise, or took some
action in the building of the house they would not have taken
but for such promise.

IV. The admitted promise of defendant to pay to the
company, knowing that it had been formed for that purpose,
must be held to be a ratification of the acts of his co-subscrib-
ers, and to have the same effect as if he had consented to the
organization. Defendant had ample opportunity to ascertain
by reading the first subscription paper, or by inquiry, whether
the opera-house to which he was subscribing was the same one
of which he had talked with Gerin, and how the same was to be
built, owned, and controlled. Without doing this he signed
an absolute, unconditional subscription, and upon the faith of
this others have not only subscribed to the enterprise, but have
since paid in a large share of it; the corporation has been
organized, engaged in business, expending large sums of
money, upon the strength of these subscriptions in entire
ignorance of the alleged misunderstandings or agreements set
up in the answer, while defendant stood by to see whether it
was going to be a profitable investment before coming in and
claiming his interest in the enterprise. To permit defendant
to release 'himself from liability on any such ground would
be a fraud on others who have subscribed and paid for stock,
and upon the corporation which has been organized and
incurred liabilities in reliance upon the subscriptions. His
promise being unconditional he cannot be allowed to invoke
conditions. (*Haskell* v. *Worthington*, 90 Mo. 560; *Minne-
apolis Threshing Machine Co.* v. *Davis,* 40 Minn. 110; 12 Am.
St. Rep. 701; *George* v. *Harris,* 4 N. H. 533; 17 Am. Dec.
446; *Ollesheimer* v. *Thompson Mfg. Co.,* 44 Mo. App. 182,
and cases cited; *Skowhogan etc. R. R. Co.* v. *Kinsman,* 77 Me.
370.)

*Leslie & Downing,* for Respondent.

Per CURIAM.—This action is founded upon two certain promises by defendant to pay the sums of $200 and $100 by way of subscription to a fund for the purpose of constructing an opera-house in the city of Great Falls, Montana. These promises read as follows: "We, the undersigned, hereby subscribe and agree to pay the amounts set opposite our respective names, for the purpose of erecting an opera-house in the city of Great Falls, upon the rear 50 feet of lots 1 and 2, in block 309; said land to be subscribed at the rate of $5,000, and the building to cost $15,000,"—to which defendant subscribed $200, along with about seventy other parties, who subscribed divers sums, ranging from $25 to $2,500 each.

The second subscription to the fund, for the same purpose, reads as follows: "We, the undersigned, hereby subscribe and agree to pay the further amounts set opposite our names, for the purpose of erecting the proposed opera-house in the city of Great Falls,"—to which defendant subscribed $100; which undertakings or promises to pay are set forth in the complaint. And it is further alleged therein that pursuant to said subscription, and by the concurrence of a majority of said subscribers to the fund for said purpose, at a meeting, of which all were notified, and at which a majority of said subscribers were present, it was determined to organize a corporation, pursuant to the laws of Montana, in the name of the "Great Falls Opera House Company," to proceed in due course to build an opera-house on the land mentioned with the funds so subscribed in the subscription lists above set forth; that the various subscribers to said fund paid their subscriptions respectively, with the exception of about $2,500, delinquent, among which is that of defendant.

Plaintiff is a corporation, organized and existing under the laws of the state of Illinois, and, as alleged in the complaint, had obtained a judgment against the Great Falls Opera House Company in the sum of $757.48, and such proceedings were had as authorized plaintiff to bring this action to enforce payment of defendant's subscription to said opera-house fund.

The answer of defendant does not deny that he signed said

subscription lists, as aforesaid, but sets up two grounds of defense against the enforcement thereof: 1. Defendant alleges that, before any corporation was formed or any liability incurred in furtherance of the scheme of building said opera-house pursuant to said subscription, he revoked and rescinded his subscription thereto; 2. For further defense, he alleges that, prior to signing said subscription list, defendant, with a few other citizens of Great Falls, discussed the project of building an opera-house in said city, which should cost the sum of $6,000, exclusive of the lot on which the same should be erected; the same to be constructed and owned by the persons contemplating the erection thereof, as a copartnership undertaking, under the management of John Gerin. That the sum sued for in this action was defendant's subscription for the building of an opera-house of that character and under those conditions. But that contrary thereto, and without defendant's knowledge or consent, a corporation was formed, and obtained possession of said subscription lists which he signed, and proceeded to erect an opera-house in said city at a cost greatly exceeding $6,000, to which he had subscribed, to wit, at a cost exceeding $40,000; that, by reason of such change in the character of the company, the cost, management, and manner of carrying out said enterprise, defendant was released from the obligation entered into by said subscriptions.

The trial which ensued resulted in a verdict by the jury in favor of defendant, whereupon plaintiff moved the court for a new trial, on a statement of the case containing all the evidence introduced at the trial, and setting forth numerous specifications of error in the rulings of the court during the trial; and, further, that the evidence is insufficient to support the verdict.

The record discloses that, upon the trial, plaintiff offered proof in support of its complaint to the effect that in the spring of 1891 the project for building said opera-house was initiated by a meeting of a large number of the citizens of said city, the purpose of which was to consider the subject of building an opera-house therein; and thereat said enterprise was agreed upon and inaugurated by opening a subscription list, which was circulated and subscribed to, as above mentioned, by about 70 subscribers, in divers sums, aggregating about $18,356,

besides the site on which said building was to be erected, valued at $5,000; and thereto defendant subscribed the sum of $200. That, when he signed said subscription list the purpose thereof was fully explained to him. And thereafter, at another meeting of the subscribers, it being determined that the funds already subscribed were insufficient to erect an opera-house of the character desired, it was proposed and determined to endeavor to increase the original subscription 50 per cent. Accordingly, another subscription paper was prepared, and signed by all present, raising their original subscriptions 50 per cent, and the same being presented to defendant, with explanation of the object and purpose thereof, he signed the same in the sum of $100, increasing his original subscription 50 per cent. That immediately thereafter, at a meeting of a majority of the subscribers, a committee was appointed to organize and incorporate the Great Falls Opera House Company, and proceed with the building of the opera-house pursuant to the plans and purposes of the subscribers to said subscription lists, which was done. That the secretary of said company thereafter, on all occasions when meetings of the stockholders thereof were called, or to be held, sent written notices of such meetings to all the subscribers on said lists, including defendant; and also, from time to time, called on said subscribers for payment of certain proportions of their subscriptions, respectively, as directed by order of the trustees of said company. That, defendant being delinquent, the treasurer of said company also called on him personally, when the construction of said opera-house was considerably advanced, and requested payment of defendant's subscription, and was assured by defendant that in a few days he would call on the treasurer and pay the same in full, but, such payment not having been made, defendant was again called on personally by a collector appointed by the company to collect the delinquent subscriptions on said lists, to whom, on two occasions, defendant promised to make payment, but that he failed to pay the same.

The evidence introduced by defendant does not in any manner substantially contradict the proof offered by plaintiff. Nor is there proof offered by defendant to establish the allegation

that he rescinded or revoked his said subscriptions before the building of said [opera-house was entered upon by said company, or at any other time.

As to the defense set up by defendant, that the subscriptions in question were made by him to build an opera-house, at a cost of $6,000, by a copartnership consisting of a few persons, residents of Great Falls, and to be managed by Gerin, the same should not have been considered at all, nor evidence in relation thereto admitted over the objection of plaintiff, because that defense does not controvert the allegation of the complaint or the promises on which this action is founded, set forth in said subscription lists. Nor does that defense allege facts in avoidance of those promises. The subscription list pleaded in the first instance sets forth the purpose thereof, to wit, that "we, the undersigned, subscribe and agree to pay the amounts set opposite our respective names, for the purpose of erecting an opera-house in the city of Great Falls, upon the rear 50 feet of lots 1 and 2, in block 309; said land to be subscribed at the rate of $5,000, and the building to cost $15,000"; an1 this subscription list was signed by defendant at the close thereof, with more than 60 names preceding his, subscribing funds aggregating over $18,000 for the purpose mentioned. Defendant does not deny that he signed that and the subsequent paper increasing his subscription thereto. Nor does he in any manner allege circumstances of deceit or fraud whereby he was induced to subscribe to that enterprise. Whatever discussion, arrangement, or determination may have been had by defendant and others as to the erection of an opera-house in said city, at the cost of $6,000, exclusive of the ground on which it was to be built, by a copartnership, under the management of Gerin, it is plain from the subscription lists on which this action is founded that the same do not contemplate such a scheme, and expressly show another, to which defendant subscribed; and defendant has failed to set up facts to avoid the same. But admitting the signing of said lists, which on their face propose a building to cost greatly exceeding $6,000, and in no manner alleging grounds to avoid his promise to pay funds subscribed thereto, defendant seeks in defense to set up the fact that, prior to subscribing to that enterprise, he had,

with others, discussed a different one; which might have been all true, but does not constitute a defense to this action. But the court allowed defendant to undertake to establish by proof that character of defense, and the same inconsistency appears in stronger light from the evidence offered by defendant, for his own proof shows that the scheme for building an opera-house at the cost of $6,000, which defendant alleges he had discussed with Gerin, the promoter and proposed manager thereof, was abandoned. Mr. Gerin, testifying on behalf of defendant, in speaking of that scheme, says: "The house originally contemplated by me, and devised, was not built. The enterprise as planned by me was not carried out." Furthermore, defendant's repeated promises to pay his subscriptions demanded in this action, when said opera-house was well advanced towards completion, contradicts the alleged defense of the revocation of said subscriptions as fictitious and unfounded in fact, and also tends to show that such subscriptions were not understood by defendant to apply to the $6,000 opera-house scheme.

We have no doubt that with proper rulings of the court as to admission of testimony consistent with the material allegations of the pleadings, and with proper instructions to the jury, a verdict would have been properly returned in favor of plaintiff, because, according to the showing of the record, no substantial defense to the action was supported by proof.

The court instructed the jury, in effect, that notwithstanding defendant's repeated promises to pay said subscriptions, while said opera-house building was in course of construction, and notwithstanding the showing on the face of the papers, and other evidence, to the effect that such subscriptions were not made in contemplation of building an opera-house at the cost of $6,000, still plaintiff must show that the opera-house company incurred some liability pursuant to such promises of defendant to pay said subscriptions, made subsequent to signing the same, or recovery could not be had. This was error. Plaintiff sued on the original promises, and no substantial defense thereto was supported by proof.

The instructions offered by plaintiff, and refused by the court, plainly and fairly stated the law applicable to the trans-

action in question, with more liberality towards defendant's alleged defense than was justified in view of the substance thereof and the want of proof to support the same. Likewise, the instructions offered by plaintiff, and given by the court, were proper and liberal statements of the law applicable to the case, as developed in the pleadings and proof, but the court erroneously modified the same by inserting therein the proposition that plaintiff could not recover unless it was shown that the opera-house company actually proceeded to incur liability, relying upon the promises of defendant to pay said subscriptions when he was called on as a delinquent, after the opera-house construction was nearly completed. So, as to the numerous assignments of error in the exclusion of testimony offered by plaintiff, such as testimony of witnesses that, when defendant signed said subscription lists, the building contemplated by the subscribers thereto, as to cost and character, was fully explained to defendant, and that the property would be bonded to raise funds, in addition to that subscribed, sufficient to erect such opera-house, and that explanation of like character was made when he signed the additional subscription list; also, the exclusion of evidence offered by plaintiff to the effect that the trustees of said company proceeded in the construction of said opera-house, relying on the subscription of the funds made by defendant and others, as shown in said subscription lists. Such evidence was proper, and should have been admitted, and we are unable to understand why the court excluded the same, in view of the pleadings in this case. The assignments of error, some twenty-six altogether, are well taken. The rulings thus excepted to grew out of the erroneous theory on which the court appears to have proceeded in the trial of this action, which we think has been sufficiently discussed without treating in detail the other assignments. All those rulings are a succession of minor errors, emanating from the erroneous theory adopted by the court, as heretofore shown.

The order denying plaintiff's motion for new trial must therefore be reversed, and the cause remanded for trial *de novo*, proceeding therein according to the views herein expressed.

*Order reversed.*

All concur.